IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLIVER HILSENRATH, | No. C-07-03586 EDL |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| MIKE SHEPARD, | |
| Defendant. | |

On July 11, 2007, Plaintiffs Oliver and Hana Hilsenrath filed this action alleging legal malpractice and negligence against Defendants Michael Shepard and Heller Ehrman, LLP. Plaintiffs are proceeding pro se. On July 31, 2007, Defendants filed a motion to dismiss, arguing that the case should be dismissed for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim. Because this matter is appropriate for decision without oral argument, the Court vacated the September 18, 2007 hearing.

**FACTS**

According to the complaint, in 2003, Plaintiff Oliver Hilsenrath ("Plaintiff") was indicted for embezzlement from his former employer, US Wireless Corporation. Compl. ¶¶ 3, 34, 35. At the time of the indictment, Plaintiff and his family lived in Tel Aviv, Israel. Compl. ¶ 4. Plaintiff hired Defendant Mike Shepard from Defendant Heller Ehrman LLP to negotiate an agreement with the government to enable Plaintiff to return from Israel to defend the charges. Compl. ¶¶ 5, 37, 38, 39. An agreement was reached under which Plaintiff waived his rights under the extradition treaty, providing that Plaintiff and his family would surrender their passports, that Plaintiff would execute a bond against the family home in Tel Aviv and that there would be no further charges added to the indictment except for tax evasion. Compl. ¶ 45. In December 2004, Plaintiff returned to the United

States pursuant to the agreement. Compl. ¶ 6.

According to Plaintiff, the government then abandoned its embezzlement theory and pursued tax evasion charges against Plaintiff instead. Compl. ¶ 7. Plaintiff argues that this shift was supposed to have been precluded under the agreement reached between the government and Heller Ehrman on behalf of Plaintiff. Compl. ¶ 8. Plaintiff claims that Mr. Shepard signed a declaration in October 2005 stating that his understanding of the agreement was that the tax evasion charges would only relate to the embezzlement scheme in the indictment, and stating specifically that the agreement was "to add whatever taxes you have in process." Compl. ¶ 46, 47. Plaintiff argues that the use of the words, "whatever tax [sic]" have proven to have "catastrophic consequences" for Plaintiff, allowing the government to freeze, and eventually destroy, Plaintiffs' multi-million dollar business and personal assets all over the world. Compl. ¶¶ 9-11, 48-49, 57-58.

Plaintiff defended himself pro se against the criminal charges. Compl. ¶ 12. He brought motions to show that the frozen assets had no relation to the alleged fraud in the indictment. Compl. ¶ 51. According to Plaintiff, the district court in his criminal matter stated that the language in the agreement allowed the government to pursue all of Plaintiff's assets and savings for tax allegations. Compl. ¶ 52. Plaintiff claims that he was "lured to this jurisdiction by bogus fraud allegations just in order to fall into a fiscal trap," which was what the agreement was supposed to prevent. Compl. ¶¶ 53-54. Plaintiff alleges that the district court permitted the government to prosecute tax evasion bearing no relation to the alleged embezzlement, and stated that Plaintiff might have a malpractice action against Shepard. Compl. ¶¶ 55-56.

In July 2007, Plaintiff reached a settlement with the government, under which Plaintiff and the government agreed that Plaintiff underpaid approximately $20,000 of taxes related to his salary, which he did not disclose on the company's annual report. Compl. ¶ 61. In total, Plaintiff must pay $2 million in taxes and penalties "allegedly owed to the United States, and not related to the indictment but related to Shepard's 'whatever.'" Compl. ¶¶ 13-14, 62. Plaintiff contends that the words "whatever tax [sic]" annulled the agreement "targeted to restrict tax allegations to only clearly alleged and publicly disclosed charges and prevent a torturous and murky fishing escapade" after Plaintiff appeared in this jurisdiction. Compl. ¶ 64.

2

**LEGAL STANDARD**

Defendants filed this motion pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks subject matter jurisdiction. The plaintiff bears the burden of establishing subject matter jurisdiction, and a court must presume lack of jurisdiction until the plaintiff establishes otherwise. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994 ). Where, as here, a defendant challenges the sufficiency of the jurisdictional allegations in the Complaint, the same standards apply to a Rule 12(b)(1) motion as apply to a motion under Rule 12(b)(6). For purposes of evaluating a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to plaintiff and its allegations are taken as true. See Abramson v. Brownstein, 897 F.2d 389, 391 (9th Cir. 1990). "However, conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." Associated General Contractors of America v. Metropolitan Water Dist. of Southern Cal., 159 F.3d 1178, 1180 (9th Cir. 1998).

**DISCUSSION**

**1.    The Court lacks subject matter jurisdiction based on diversity of citizenship.**

Where the jurisdictional amount in controversy is met, diversity jurisdiction exists between citizens of different states. See 28 U.S.C. § 1332(a)(1). "In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States and be domiciled within the State." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828 (1989) ("The problem in this case is that [defendant] Bettison, although a United States citizen, has no domicile in any State. He is therefore 'stateless' for purposes of section 1332(a)(3)."); Schwarzer, Federal Civil Procedure Before Trial, § 2:240 (The Rutter Group 2007) (A dual citizen, living abroad, cannot sue or be sued in federal court based on diversity).

Here, Plaintiff alleges that he and his family are citizens of Israel and the United States, living permanently in Israel at the time of the indictment and moving temporarily to California for the sole purpose of defending the criminal charges. Compl. ¶¶ 4, 15, n. 1, 21. Plaintiff argues in his opposition that he and his wife were born, raised and lived the majority of their lives in Israel, establishing United States citizenship in 1999/2000 during a five-year stay in California. Plaintiff

3

also argues that he lived in Israel while Defendant Shepard negotiated with the government. Because Plaintiff lives in California temporarily, he is not domiciled here, and therefore, he is not a citizen of California for purposes of diversity jurisdiction. See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001) ("The natural person's state citizenship is then determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return. [citation omitted]. A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state.") (citing Weible v. United States, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, . . . .")). Even if Plaintiff is domiciled here for purposes of jurisdiction, diversity jurisdiction does not exist because Defendants are also from California. Compl. ¶ 16.

Diversity jurisdiction also exists between citizens of a State and citizens or subjects of a foreign state, assuming the jurisdictional amount in controversy is met. See 28 U.S.C. 1332(a)(2). However, a United States citizen domiciled abroad is not an alien or foreign subject for purposes of diversity jurisdiction. See Newman-Green, 490 U.S. at 828 ("Subsection 1332(a)(2), which confers jurisdiction in the District Court when a citizen of a State sues aliens only, also could not be satisfied because [defendant] Bettison is a United States citizen [even though he lives abroad]."); Schwarzer, Federal Civil Procedure Before Trial, § 2:260.1 (The Rutter Group 2007) ("Such dual nationals are still U.S. citizens, not aliens for purposes of alienage jurisdiction."). Here, Plaintiff is a United States citizen, so even if he is a dual citizen living in Israel, he cannot satisfy the alienage jurisdiction requirements. Accordingly, diversity jurisdiction is lacking.

**2.      The Court lacks subject matter jurisdiction based on federal question jurisdiction.**

A court lacks federal question jurisdiction where a complaint does not present a substantial issue of federal law or where the resolution of federal questions does not play a significant role in the proceedings. See Merrell Dow Pharmaceuticals, Inc v. Thompson, 478 U.S. 804, 813 (1986) ("Franchise Tax Board, however, did not purport to disturb the long-settled understanding that the

4

mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."); Lippitt v. Raymond James Fin. Servs., 340 F.3d 1033, 1040 (9th Cir. 2003) ("It is a long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."); Berg v. Leason, 32 F.3d 422, 423 (9th Cir. 1994) (to present a federal question, the complaint must "present[] a substantial dispute over the effect of federal law, and the result [must] turn[] on the federal question."); Yokeno v. Mafnas, 973 F.2d 803, 807 (9th Cir. 1992) (merely alleging a constitutional violation is insufficient, stating "our limited jurisdiction cannot be invoked so simplistically.").

Here, Plaintiff alleges in his complaint that Defendants failed in their duty of care to Plaintiff and that his professional negligence and legal malpractice claims are based on Defendants' "fiduciary duty to represent plaintiff competently and diligently." Compl. ¶¶ 30-32. The complaint contains two claims in which Plaintiff refers to constitutional amendments, both of which allege that Defendants aided and abetted the violation of those rights. Compl. ¶ 74 ("By their breach of the duty of care, defendants aided and abetted the breach of plaintiffs' right to property pursuant to the 4th and 5th amendment of the Constitution."), ¶ 80 ("Defendants aided and abetted the breach of Plaintiffs' right of due process pursuant to the 6th amendment of the US Constitution."). These legal allegations, cast in the form of factual allegations, are conclusory and therefore, the Court need not accept them as true. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981); see Miranda v. Clark County, Nev., 279 F.3d 1102, 1106 (9th Cir.2002) ("[C]onclusory allegations of law and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim").

Moreover, these claims, which are alleged to support Plaintiff's claim that Defendants aided the government in freezing his assets, sound in state malpractice law and do not arise under federal law. See Berg, 32 F.3d at 426 (reversing trial court's denial of the plaintiff's motion to remand, holding that the malicious prosecution claim based on a prior federal securities and RICO lawsuit

5

1   did not arise under federal law "simply because one element requires proof that the underlying
2   federal action was legally untenable."); see also Custer v. Sweeney, 89 F.3d 1156, 1168-69 (4th Cir.
3   1996) (holding that legal malpractice claim did not incorporate federal law issues substantial enough
4   to create federal question jurisdiction even though the malpractice claim was related to ERISA
5   claim); Diaz v. Sheppard, 85 F.3d 1502, 1505-06 (11th Cir. 1996) (holding that prisoner's legal
6   malpractice claim did not satisfy federal question jurisdiction); Higbee v. Malleris, 470 F. Supp. 2d
7   845, 851-53 (N.D. Ill. 2007) (collecting cases and granting motion to remand the plaintiff's
8   professional malpractice claim where underlying case was federal employment discrimination
9   matter); Sheridan v. New Vista, LLC, 406 F. Supp. 2d 789, 794-96 (W.D. Mich 2005) (granting
10  motion to remand of investors claims of, *inter alia*, fraud, professional negligence, and breach of
11  fiduciary duty because the claims did not arise under federal law even though defendants argued that
12  the state law claims would present questions of federal tax laws).
13          Therefore, the Court lacks federal question subject matter jurisdiction.
14  **CONCLUSION**
15          Accordingly, Defendants' motion to dismiss is granted and the complaint is dismissed
16  without leave to amend and without prejudice to Plaintiff pursuing his claims in state court. See
17  Morongo Band of Mission Indians v. California State Bd. of Equalization, 858 F.2d 1376, 1380 (9th
18  Cir. 1988) ("If jurisdiction is lacking at the outset, the district court has 'no power to do anything
19  with the case except dismiss.' [citations omitted] . . . . If jurisdiction was lacking, then the court's
20  various orders, including granting leave to amend the complaint, were nullities.").

    **IT IS SO ORDERED.**

    Dated: September 19, 2007

                                    _Elizabeth D. Laporte_
                                    ELIZABETH D. LAPORTE
                                    United States Magistrate Judge